IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| *Plaintiff-Respondent* | } | |
| | } | |
| v. | } | CRIMINAL ACTION NO. H-95-142-03 |
| | } | CIVIL ACTION NO. H-03-2644 |
| PEDRO MORENO | } | |
| *Defendant-Petitioner* | } | |

**MEMORANDUM & ORDER**

Pending before the court is Movant Pedro Moreno's Motion to Vacate, Set Aside, or Correct Sentence under Title 28 United States Code Section 2255 (Instrument No. 5169) and the Government's response (Instrument No. 5313). For the following reasons, the court ORDERS that Pedro Moreno's Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

I.  Facts

On 10 October 1996, Pedro Moreno ("Moreno") and seventy-eight co-defendants were charged under a one hundred and ninety-six count sixth superceding indictment (Instrument No. 19). The indictment charged Moreno with being a leader of a large criminal organization that, between 1986 and 1996, was responsible for transporting thousands of kilos of marijuana across the border from Mexico and to destinations throughout the United States.

On 13 April 1998, Moreno pled guilty pursuant to a plea agreement (Instrument No. 2599). In exchange for Moreno's plea of guilty to count five, conspiracy to launder monetary instruments in violation of Title 18 United States Code Section 1956(g) and (h), and count eighty-eight, operating a continuing criminal enterprise in violation of Title 21 United States Code Section 848,

as well as his waiver of appellate rights,[1] the Government agreed to dismiss the remaining counts at sentencing, not oppose a reduction for acceptance of responsibility, and consider Moreno for a 5K1.1 motion should he provide substantial assistance.

After Moreno entered his plea of guilty, the Probation Department was ordered to generate a pre-sentence report ("PSR").  In April 2001, Probation issued its final PSR (Instrument No. 4276). Significantly, Probation recommended adding two points to Moreno's base offense level for obstruction of justice and awarding him no points for acceptance of responsibility.  This resulted in a five point swing, taking Moreno from a guideline range of 324 to 405 months to a guideline range of life. *See* U.S. Sentencing Guidelines Manual Sentencing Table (2000). Probation's recommendation was based on its finding that Moreno had willfully obstructed justice by:

> "paying a co-conspirator, Martin Garcia-Garcia, to flee to Mexico; paying a co-conspirator, Lauro Chapa, to omit the defendant's participation in drug trafficking, hiding assets and properties from the Government to prevent their seizure/forfeiture; plotting to kill cooperating witnesses/co-conspirators; influencing co-conspirators not to provide incriminating evidence against him; telling a fictitious story about corrupt law enforcement officials to the Government in hopes of gaining a sentencing reduction and soliciting a cooperating witness to corroborate the false story."

PSR at ¶ 181.

Moreno was sentenced on 27 April 2001.  The court adopted Probation's facts and application of the guidelines to the facts and imposed a sentence of life as to count eighty-eight, to be followed by five years supervised release, and a sentence of two hundred and forty months as to count five, to be followed by three years supervised release, both counts to run concurrently.

---

[1]The plea agreement provides that Moreno waives his right to appeal his conviction and sentence except for any upward departure or to allege ineffective assistance of counsel or prosecutorial misconduct in a motion pursuant to 28 U.S.C. § 2255.  *See* Plea Agreement.

Moreno was fined $5,000,000.00 and ordered to pay special assessment of $100 as to each count. The court dismissed the remaining counts on the Government's motion.

Moreno appealed his sentence to the Fifth Circuit, which affirmed on 23 April 2002. *United States of America v. Pedro Moreno*, 01-20509 (5th Cir. 23 April 2002) (Instrument No. 4795). The sole issue Moreno raised on appeal was whether the indictment failed to sufficiently allege drug quantity under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id.*

Moreno filed the instant motion on 16 July 2003. His original filing claims only that his trial counsel rendered him ineffective assistance of counsel by failing to adequately inform him of the nature and consequences of his plea. *See* Petitioner's Motion to Vacate at 5 (Instrument No. 5196). On 17 March 2004, Moreno supplemented his motion with a memorandum of law (Instrument No. 5281). This memorandum raises three additional claims: that his trial counsel rendered ineffective assistance by failing to object to the factual basis given at Moreno's guilty plea; that this court denied Moreno due process when it ordered the United States Attorney's Office to provide probation with factual summarizes for its use in drafting Moreno's PSR; and that Moreno entered his plea unknowingly. Additionally, Moreno requests an evidentiary hearing to further develop his claims.

II. Law

Title 28 United States Code Section 2255 ("Section 2255) provides that,

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To succeed on a claim based on a violation of federal law, petitioner must show that the law violation caused a "fundamental defect" in the underlying proceeding resulting in a "complete miscarriage of justice." *Davis v. U.S.* 417 U.S.333, 346 (1974). Claims under Section 2255 are subject to a one year statute of limitations. Petitioners urging claims for the first time in a Section 2255 motion must show cause and prejudice why the claim was not presented to the appellate court on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (U.S. 2003); *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995). In this context, cause and prejudice means (1) that the claim could not have been raised on direct appeal and (2) that the error complained of would, if left uncorrected, result in a miscarriage of justice. *Id.* Claims of ineffective assistance of counsel are exempted from this rule, and may be raised for the first time in a collateral attack. *Massaro,* 538 U.S. at 504.

Petitioners claiming ineffective assistance of counsel at their guilty pleas must show that counsel's performance fell below an objective standard of reasonableness and that they were prejudiced as a result. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the context of a guilty plea, to be effective counsel should give his client an adequate "understanding of the law in relation to the facts" and help him reach an informed choice. *United States v. Rumery*, 698 F.2d 764 (5th Cir. 1983) (quoting *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir.1974) (citations omitted)). Prejudice, in the context of a guilty plea, means that there is a reasonable probability that, but for counsel's deficient performance, petitioner would have insisted on going to trial. *Hill*, 474 U.S. at 59; *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). This assessment depends, in part, on a prediction of what the outcome at trial might have been. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (quoting *Hill*).

III. Application of law to the facts

Moreno raises four claims in support of his motion for relief under Section 2255. First, Moreno claims his attorney rendered ineffective assistance by failing to explain the consequences of his guilty plea. Second, Moreno claims his attorney rendered ineffective assistance by failing to object to the factual basis given in support of his guilty plea. Third, Moreno claims the court violated his due process rights by ordering the United States Attorney's Office to provide the Probation Department with written factual summaries to be used in preparing his PSR. Fourth, Moreno claims his guilty plea was unknowing.

Before considering Moreno's claims, the court will consider the Government's argument that Moreno forfeited his second, third, and fourth claims by failing to raise them in his original pleading. Motions under Section 2255 may be amended and supplemented as provided for in Federal Rule of Civil Procedure 15. *United States v. Reyes Saenz*, 282 F.3d 354, 355-56 (5th Cir. 2002). Rule 15 allows litigants to amend or supplement their pleadings once before service of a responsive pleading. FED. R. CIV. P. 15. Here, Moreno filed his memorandum of law in support of his motion, raising his supplemental claims, before the Government filed its responsive pleading. Therefore, Moreno's supplemental claims relate back the filing of his motion and are timely.

Moreno's first argument, that he received ineffective assistance of counsel at his guilty plea, fails to satisfy either the cause or prejudice prongs of the *Strickland* test. First, as a factual matter, the record conclusively shows that Moreno discussed his plea with his attorneys and was satisfied with the counsel they gave him. *See Bryan v. United States*, 492 F.2d 775, 779-780 (1974) (affirming district court's denial of Section 2255 motion, without holding a hearing, where Movant "tendered only his own affidavit to counter a record composed of the directly inconsistent former testimony by himself . . ."); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn

declarations in open court carry a strong presumption of verity."). Moreno testified at his guilty plea that he had read the plea agreement and indictment, had reviewed both documents with his attorney, fully understood the agreement and indictment, understood he was facing a maximum possible sentence of life in prison, and was satisfied with the counsel and representation he had received from his attorneys. *See* Transcript of Rearraignment Proceedings (Instrument No. 2701). In addition to Moreno's statements on the record, Moreno's attorney added that, she had had a lengthy discussion with her client the morning of his guilty plea. *Id.*

Even if the court accepted Moreno's representation that his attorney's performance fell below an objective level of reasonableness, it would still conclude that he has not shown he would have insisted on proceeding to trial. Moreno's primary argument, that he would not have pled guilty had he known he was facing life in prison, is refuted by his statements on the record. *Id.* Additionally, the evidence against Defendant was overwhelming and, had he proceeded to trial, he almost certainly would have been convicted and sentenced to life in prison. By pleading guilty to the charge, Moreno gained the possibility of a three point reduction in his offense level for acceptance of responsibility and the possibility of recieving a downward departure pursuant to 5K1.1. All told, had Moreno accepted responsibility for his crimes, truthfully debriefed with the Government, and otherwise kept his peace, he could have expected a sentence of at most 324 months. Instead, Moreno chose to not accept responsibility for his crimes, lie to the Government, and, among other acts of obstruction, plot to murder Government witnesses. The only person Moreno can hold responsible for his sentence is himself.

Moreno's claim that he received ineffective assistance of counsel when his attorney failed to object to the factual basis for his guilty plea is also meritless. Federal Rule of Criminal Procedure

11 requires the trial judge to be subjectively satisfied that a factual basis exists for the plea. *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir. 1979) (en banc); *see also United States v. Adams*, 961 F.2d 505, 509 (5th Cir. 1992) ("If sufficiently specific, an indictment or information can be used as a the sole source of the factual basis for a guilty plea") (internal citations omitted).  Here, Moreno argues that a sufficient factual basis did not exist because the Government did not discuss drug weights.  This claim is belied by the record.  The transcript reflects that the Government stated it could prove that Moreno's organization had been responsible for transporting "multithousand kilos of marijuana" and that on one occasion members of the conspiracy were caught with two thousand pounds of marijuana.  *See* Transcript of Rearraignment at 48.

Moreno's claim that the court violated his due process rights by ordering the United States Attorney's Office to provide factual summaries to the Probation department for its use in drafting Moreno's PSR is procedurally barred.  Moreno did not present this claim to the appellate court on direct appeal, and has not made any argument why this failure should be excused.  Moreover, even if Moreno's claim was not procedurally barred, it is meritless.  Probation routinely compiles the offense conduct section in the PSR by interviewing case agents and reviewing their investigative reports.  In this case, there were few investigative reports and Probation was having trouble scheduling interviews with the case agents.  Because this court was becoming concerned about the amount of time being taken to write Moreno's PSR, it ordered the Government to prepare, in consultation with the case agents, written summaries of the offense conduct.  Probation's response to Moreno's contemporaneous objection reflects that, by the time it received the Government's summaries, it had already completed nine-tenths of the offense conduct section.  *See* Final

Presentence Report (Instrument No. 4276).[2]  Probation's response also states that it confirmed the remaining information through interviews with the case agents. *Id.*

Like his due process claim, Moreno's claim that his plea was unknowing is procedurally barred.  It is also conclusively disproved by the record evidence.  Moreno argues that he would not have enterred a plea of guilty had he known that the Government would write his PSR, or that there was an insufficient factual basis in the record for his plea.  As the court has already explained, Moreno's PSR was written by Probation and contains no irregularities. Furthermore, an adequate factual basis existed for Moreno's guilty plea.

IV.  Conclusion

For the aforementioned reasons, the Court ORDERS that Movant Pedro Moreno's Motion to Vacate, Set-Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.

---

[2] Probation's response, in its entirety, states:

**Response**: As in any case, the facts contained in the Offense Conduct section are built from the investigative reports prepared by the case agents and through our interviews of them.  Because there were few investigative reports prepared in this case and due to conflicts with schedules, this office was losing precious time having to have the agents come in, read from their notes which the lead writer would then memorialize.  The court became concerned, as was this office, in the length of time the defendants were spending in jail prior to sentencing.  It made sense to the Court, to require the agents to "memorialize" their investigation, so that this office could prepare the PSRs more efficiently.  It should be noted that prior to the Court's order of October 18, 2000, this office had already prepared nine-tenths of the Offense Conduct section.  The remaining one-tenth dealt with a few issues needing further clarification and research, but primarily dealt with the facts contained in the Obstruction of Justice section.  While the lead writer had met several times with the agents concerning the defendant's debriefing and "false story," the details concerning those incidents lay primarily in the agents' personal notes, which had not been formally memorialized.  As noted in the Court's order, the Government was only given *two weeks* to turn over their information to this office.  Following the Court's order, the lead writer turned over questions that still needed answering or further clarification and asked the agents and prosecutor to memorialize their notes regarding their interviews of the CI and the defendant relative to the obstruction of justice.  After this office received the draft provided by counsel for the Government, the lead writer again re-interviewed the agents and edited the information provided.  Further, the defendant was provided an opportunity at his interview with the probation office to provide any information he had concerning the facts of this case.  He chose not to do so.  On or about October 18, 1999, this office met with the defendant's defense team, along with several other attorneys for the Moreno brothers to discuss concerns and issues about the case that might impact sentencing.  On October 19, 1999, this office provided a copy of the overview (with permission of the Court) to defense counsel and requested in writing specific information from 1999, this office left a voice mail message with defense counsel requesting a statement from the defendant and asked that it be submitted to our office by January 2, 2001.  Again, there was no response.  At no time was the independence of this office compromised, in either the initial finding of fact or the application of the Sentencing Guidelines.

**SIGNED** at Houston, Texas, this 27th day of September, 2006.

*(signature)*
MELINDA HARMON
UNITED STATES DISTRICT JUDGE